Filed 1/27/15

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| JACOB W. GREENWELL, JR., | C074546 |
| Plaintiff and Appellant, | (Super. Ct. No. 39201300293169CUBTSTK) |
| v. | |
| AUTO-OWNERS INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Linda L. Lofthus, Judge. Affirmed.

Hereford Kerley, J. Edward Kerley; Law Office of Dylan Schaffer and Dylan Schaffer for Plaintiff and Appellant.

Ericksen Arbuthnot, William A. Jenkins and Gregory A. Mase for Defendant and Respondent.

This case goes to show that sometimes life can be like an essay question on a law school exam. Here, a California resident owned an apartment building in Arkansas that

1

was insured by a Michigan insurance company under a policy the owner obtained through an insurance agent in Arkansas. That policy included commercial property coverage for the Arkansas apartment building and commercial general liability coverage for the owner's property ownership business, which he operated from California. Other than writing this policy, the insurer did no business in California.

Both the commercial property coverage and the commercial general liability coverage in the policy covered some risks, losses, or damages that could have arisen in California, but the dispute at issue here arose out of two fires that damaged the building in Arkansas. Initially, the insurer agreed to treat the two fires as separate losses but later reversed its position and took the position that both incidents were subject to only a single policy limit payment. As a result, the owner sued the insurer in a California state court for breach of contract and bad faith.

Here is the question: Under the foregoing circumstances, did the insurer have sufficient minimum contacts with California to allow the state court to exercise personal jurisdiction over the company in this action? We conclude the answer is "no." Under the federal constitutional test for specific jurisdiction, we agree with the owner that the insurer purposefully availed itself of the privilege of conducting activities in California by writing a policy that covered various risks, losses, and damages that could have arisen in California. Nevertheless, we also conclude that there was no substantial nexus between the insurer's activities in California and the present action because the owner is not suing the insurer for any California risk that came to fruition; he is suing the insurer because of something that happened to his business property in Arkansas, which is where he obtained the insurance at issue, the main purpose of which was to cover potential risks and damage to that Arkansas property. In the absence of a substantial nexus between the insurer's California activities and this suit, the exercise of personal jurisdiction over the insurer in this case does not comport with due process. Accordingly, we affirm the trial court's order granting the insurance company's motion to quash the service of summons.

FACTUAL AND PROCEDURAL BACKGROUND

In 2007, plaintiff Jacob W. Greenwell, Jr., resided in Tracy and was doing business there as Greenwell Properties. At some point (perhaps in 2007), he acquired ownership of an apartment building in Little Rock, Arkansas. In September 2007, working through an insurance agency in Little Rock, Greenwell applied to defendant Auto-Owners Insurance Company for a tailored protection insurance policy -- in particular, for commercial property coverage and commercial general liability coverage. On the application, the applicant was listed as "Jacob W. Greenwell dba Greenwell Properties." The application described the business's operations as "property owner." An address in Tracy was listed as the mailing address for the business, but the commercial property coverage was obtained specifically for the apartment building in Arkansas. The commercial general liability section of the application also specifically referenced the apartment building.

Auto-Owners issued the policy to Greenwell effective September 14, 2007, and delivered the policy to him at his address in Tracy. The annual premium for the commercial property coverage was $5,899 and the annual premium for the commercial general liability coverage was $257.

Greenwell's policy was renewed three times, through September 2011. There is no evidence in the record of the mechanics of the renewal. Throughout the period the insurance was in place, Greenwell mailed all of his premiums from his address in Tracy and communicated with representatives of Auto-Owners from there also.

In February 2013, Greenwell commenced the present action against Auto-Owners in San Joaquin County Superior Court alleging causes of action for breach of contract and breach of the covenant of good faith and fair dealing. He alleged that in June 2010 his apartment building in Arkansas was damaged by a fire and the next day was damaged by a second fire. He claimed that although Auto-Owners originally treated the incidents as two separate losses under the policy, after he entered into a repair contract for more than

3

$1 million, the insurer wrongfully reversed its position and claimed that "only a single [policy] limit applied to both losses." As a result of Auto-Owner's conduct, Greenwell claimed he defaulted on the construction contract and on the secured loan on the apartments and had to sell the property for less than $50,000.

Auto-Owners moved to quash service of summons for lack of jurisdiction. In support of its motion, Auto-Owners submitted evidence to the effect that, other than this one policy, it does not do any business in California. In response, Greenwell asserted that Auto-Owners had "availed itself of the benefits of California by entering into a relationship in California with [him] beginning in 2007" and had "provided insurance to [him] covering myriad facets of his business liability."

The trial court concluded that Greenwell had not met his burden of establishing that Auto-Owners had the minimum contacts with California necessary to justify the exercise of personal jurisdiction over the company. Accordingly, the court granted the motion to quash service of summons. Greenwell timely appealed.

DISCUSSION

On appeal, Greenwell contends the trial court erred in finding that it lacked personal jurisdiction over Auto-Owners in this action. We disagree.

I

*General Principles Of Personal Jurisdiction*

"Where a nonresident defendant challenges jurisdiction by way of a motion to quash, the plaintiff bears the burden of establishing by a preponderance of the evidence that minimum contacts exist between the defendant and the forum state to justify imposition of personal jurisdiction. [Citations.] The plaintiff must present facts ' "demonstrating that the conduct of defendants related to the pleaded causes [of action] is such as to constitute constitutionally cognizable 'minimum contacts.' " ' " (*Elkman v. National States Ins. Co.* (2009) 173 Cal.App.4th 1305, 1312-1313.) "[W]here the

4

evidence of jurisdictional facts is *not* conflicting, the question of whether a defendant is subject to personal jurisdiction is one of law." (*Id.* at p. 1313, italics omitted.)

A California court "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) "A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*).)

"Personal jurisdiction may be either general or specific." (*Vons*, *supra*, 14 Cal.4th at p. 445.) Only specific jurisdiction is at issue here. "If the nonresident defendant does not have substantial and systematic contacts in the forum sufficient to establish general jurisdiction, he or she still may be subject to the *specific* jurisdiction of the forum, if the defendant has purposefully availed himself or herself of forum benefits [citation], and the 'controversy is related to or "arises out of" a defendant's contacts with the forum.' " (*Id.* at p. 446.)

II

*McGee v. International Life Ins. Co.*

As his opening salvo, Greenwell contends this case is controlled by *McGee v. International Life Ins. Co.* (1957) 355 U.S. 220 [2 L.Ed.2d 223].) In *McGee*, a California resident (Franklin) purchased a life insurance policy from an Arizona insurance company. (*Id.* at p. 221 [2 L.Ed.2d at p. 225].) After assuming the Arizona company's insurance obligations, a Texas insurance company "mailed a reinsurance certificate to Franklin in California offering to insure him in accordance with the terms of the policy he held with" the Arizona company, which he accepted. (*Ibid.*) After Franklin died, his mother, the beneficiary under the policy, sued the Texas company in California when the company

5

refused to pay out the insurance proceeds because the company contended Franklin committed suicide. (*Id.* at p. 222 [2 L.Ed.2d at p. 225].)

The question of whether jurisdiction was proper in California under the due process clause ultimately ended up in the United States Supreme Court, and that Court concluded that California properly asserted jurisdiction over the matter because "the suit was based on a contract which had a substantial connection with that State." (*McGee v. International Life Ins. Co.*, *supra*, 355 U.S. at p. 223 [2 L.Ed.2d at p. 226].) In reaching its decision, the court specifically noted as follows: "The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum--thus in effect making the company judgment proof. Often the crucial witnesses--as here on the company's defense of suicide--will be found in the insured's locality. Of course there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process." (*Id.* at pp. 223-224 [2 L.Ed.2d at p. 226].)

Greenwell contends that *McGee* is "indistinguishable" from this case, but that is clearly not true. At least two significant facts distinguish this case from *McGee*. First, in *McGee*, the Texas company sent a reinsurance offer to California and thus specifically solicited business in the forum state. Here, in contrast, there is no evidence that Auto-Owners did anything to solicit Greenwell's business in California. Greenwell repeatedly asserts that Auto-Owner "solicited [the policy] renewals from [him] at his California business," but he never cites any evidence in support of those assertions, because there is none. In support of its motion, Auto-Owners offered evidence that it "does not solicit

business in California." If Auto-Owners had, indeed, solicited the policy renewals from Greenwell, we would have expected him to offer evidence of that fact in his opposition to the motion, to contradict the evidence offered by the company in its moving papers. He did not do so. Instead, he simply stated that "[f]rom 2007 to 2010, Auto-Owners Insurance delivered four policies . . . to me at [my address] in Tracy, California." Thus, there is no evidence that Auto-Owners purposefully solicited Greenwell's business in California, either in connection with the original application or in connection with any of the policy renewals.

The second material distinction between this case and *McGee* is that the policy at issue in *McGee* was a life insurance policy on the life of a California resident, and the insured event -- the insured's death -- that provided the basis for the lawsuit occurred in California. Here, in contrast, the policy at issue was a commercial property and general liability policy that was purchased by a person who was operating a building ownership business from California, the only apparent subject of which was an apartment building in Arkansas, where the insured event or events -- the fires at the building -- occurred. On this basis, too, this case is unlike *McGee*.

Greenwell contends that, as "a small-business owner," he -- like the beneficiary in *McGee* -- "would be at a severe disadvantage if he was compelled to follow [Auto-Owners] to a distant state in order to hold it legally accountable." In *McGee*, however, there was no evidence the beneficiary had any connection whatsoever to any state other than California, including Texas, the home state of the defendant insurance company. Here, in contrast, Greenwell *owned an apartment building in Arkansas* and thus had substantial contacts with that state for purposes of conducting that business there. As just one example, if Greenwell had needed to evict a tenant from his apartments, he presumably would have had to avail himself of the courts in Arkansas.

Greenwell contends that Arkansas is "foreign to both insurer and insured," because he operates his business from Tracy and Auto-Owners' principal place of

7

business is in Michigan.  Not so.  While Arkansas may not be the *home* state of either party, both parties were doing substantial business in Arkansas -- Greenwell by owning an apartment building there and Auto-Owners by writing insurance policies on such businesses.

III

*Purposeful Availment*

Having refuted Greenwell's claim that this case is "controlled by" and "indistinguishable" from *McGee*, we return to the general legal principles that govern here.  "If general jurisdiction is not established, a nonresident defendant may still be subject to California's *specific* jurisdiction if a three-prong test is met.  [Citation.]  First, the defendant must have *purposefully availed* itself of the state's benefits.  Second, the controversy must be *related to or arise out of* the defendant's contacts with the state. [Citation.]  Third, considering the defendant's contacts with the state and other factors, California's exercise of jurisdiction over the defendant must comport with *fair play and substantial justice*."  (*Gilmore Bank v. AsiaTrust New Zealand Ltd.* (2014) 223 Cal.App.4th 1558, 1568 (*Gilmore Bank*).)  Greenwell "bear[s] the burden of establishing that the first two requirements for specific jurisdiction have been met.  [Citation.]  If [he] do[es] so, the burden shifts to [Auto-Owners] to show that California's exercise of jurisdiction would be unreasonable."  (*Ibid.*)

We begin with the "purposeful availment" prong of the test.  "[I]n *Hanson v. Denckla* (1958) 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1298, 78 S.Ct. 1228], the [United States Supreme C]ourt held that 'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " (*A.I.U. Ins. Co. v. Superior Court* (1986) 177 Cal.App.3d 281, 287.)  "For purposes of the purposeful availment prong, the '. . . United States Supreme Court has described the forum contacts necessary to establish specific jurisdiction as involving *variously* a

8

nonresident who has "purposefully directed" his or her activities at forum residents [citation], *or* who has "purposefully derived benefit" from forum activities [citation], *or* " 'purposefully avail[ed himself or herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' " ' *or* ' " 'deliberately' has engaged in significant activities with a State [citation] *or* has created 'continuing obligations' between himself and residents of the forum [citation]." ' [Citation.]  This disjunctive language, along with the Supreme Court's rejection of mechanical or ' "talismanic" ' formulas [citation], suggests that the above formulations describe *alternative*, but not mutually exclusive, tests for purposeful availment." (*Gilmore Bank*, *supra*, 223 Cal.App.4th at p. 1568.)  Courts must make the necessary assessment "on a case by case basis, focusing on the *nature and quality* of the defendant's activities in the state or with state residents." (*Ibid.*)  "[T]he underlying rationale of all the purposeful availment tests is that 'it is fair to subject defendants to specific jurisdiction, because their forum activities should put them on notice that they will be subject to litigation in the forum.' " (*Gilmore Bank* , *supra*, 223 Cal.App.4th at p. 1573.)

Here, Greenwell contends Auto-Owners was on notice that it would be subject to litigation in California because of the coverage in the policy it issued to him.  First, with regard to the commercial general liability coverage in the policy, Greenwell contends the policy "covered damages [he] might become obligated to pay as the result of bodily injury or property damage," as well as "personal injury and advertising damage."  He further contends that the coverage territory encompassed (but was not limited to) all of the United States.  Thus, he argues, "if [he] drove from his office [in Tracy] to get lunch and killed a pedestrian, [Auto-Owners] would have been liable," or "[i]f [his] business computer exploded and burned a repairman, [Auto-Owners] would have been on the hook."

9

Greenwell further argues, with regard to the commercial property coverage in the policy, that the policy applied to his "Arkansas apartment building, as well as any other property he acquired in the United States or Canada intended for (a) a similar use as the Arkansas property or (b) use as a warehouse." Thus, he contends, "if [he] had purchased an apartment building in Tracy the day after the policy issued, and it burned down, [Auto-Owners] would have been liable not only to pay for the repairs, but for [his] lost business income" from the property.

Based on the foregoing aspects of the policy, Greenwell contends that "[g]iven the broad coverage umbrella the policy extended over [his] California business, [Auto-Owners] cannot seriously claim it could not have foreseen that it might be called upon to defend itself in a California court."

Auto-Owners makes only a half-hearted attempt to dispute Greenwell's contentions regarding the scope of the coverage in the policy the company issued to him. With respect to Greenwell's first hypothetical -- the auto accident on the way to lunch -- Auto-Owners claims it "would not have been liable," but it makes no attempt to justify that assertion. We can, however, conceive of a basis for Auto-Owners' assertion in this regard. The commercial general liability coverage covered "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies," but the coverage applied only with respect to Greenwell's conduct of his business. While on his way to get lunch, Greenwell would -- at least arguably -- not be engaged in the conduct of his business, and thus any injury he caused would not be subject to the commercial general liability coverage in the policy. (Cf. *Gipson v. Davis Realty Co.* (1963) 215 Cal.App.2d 190, 209-210 ["it is the general rule that an employee on his way to lunch, even though he is driving an automobile which is the property of the master, is not engaged in furthering any end of the employer, and that therefore under such circumstances, the servant is not acting within the scope of his employment"].)

10

As to Greenwell's second hypothetical under the commercial general liability coverage, however, Auto-Owners does not dispute that it would have been responsible under that coverage for damages Greenwell might have had to pay because of the injury to the computer repairman that Greenwell hypothesizes. Furthermore, we note that under that coverage, the company would have had "the . . . duty to defend [Greenwell] against any 'suit' seeking those damages."

With respect to Greenwell's third hypothetical, Auto-Owners does dispute its potential liability for fire damage to after-acquired property in Tracy under the commercial property coverage in the property, but again the company makes no real attempt to justify its position in this regard. Auto-Owners asserts that it "could [not] cover such a loss as it is not licensed to do so," but it offers no authority to support that assertion, and in reply Greenwell points to authority supporting the contrary proposition -- that an insurer need not be licensed to conduct business in a particular state in order to cover a loss occurring there. (See *McClanahan v. Trans-America Ins. Co.* (1957) 149 Cal.App.2d 171, 172-173 [Alabama insurance company that never qualified to do business in California nonetheless insured losses arising out of automobile accidents occurring anywhere in the continental United States].)

As we read the policy, under an endorsement to the commercial property coverage for newly acquired or constructed property, Auto-Owners did agree to pay for direct physical loss or damage to any building Greenwell acquired at another location intended for use as an apartment building or as a warehouse, but that coverage was essentially intended as gap coverage, lasting a maximum of 90 days or until Greenwell secured other insurance for the property. Furthermore, the territory in which this coverage applied extended throughout the United States, Puerto Rico, and Canada. Thus, Greenwell's third hypothetical does appear to be generally correct, in that if he had purchased an apartment building in Tracy when the policy was in effect, and if that building had been damaged by fire before he secured other insurance for the property and less than 90 days

11

after he purchased the property, the commercial property coverage provided to him by Auto-Owners would have applied.

Thus, notwithstanding Auto-Owners' protestations to the contrary, it does appear that the policy the company issued to Greenwell covered certain potential risks and losses that could have occurred, and damages that could have been imposed on Greenwell, in California, and under the general commercial liability coverage in particular, Auto-Owners assumed a duty to defend Greenwell against suits that could have been filed in California seeking those damages.

Rather than seriously attempting to dispute the responsibility it could have under the policy in some or all of the hypothetical situations posed by Greenwell, Auto-Owners emphasizes instead that the circumstances Greenwell has imagined "do not exist in this case" and that "Greenwell's claims [here] are based on losses that occurred in Arkansas." This argument, however, is not really directed at the "purposeful availment" prong of the test for specific jurisdiction, which -- as we have explained -- focuses on the nature and quality of the defendant's activities in the state or with state residents. (*Gilmore Bank*, *supra*, 223 Cal.App.4th at p. 1568.) In other words, in determining whether Auto-Owners purposefully availed itself of the privilege of conducting activities in California, we are not concerned with the fact that the lawsuit at issue here arises out of damage that occurred to property in Arkansas. Rather, at this point we are concerned with the relationship that Auto-Owners entered into with Greenwell, a California resident, and whether the nature and quality of that relationship put Auto-Owners on notice that it could be subject to litigation in California.

On this particular point, we agree with Greenwell that Auto-Owners' contacts with California satisfied the "purposeful availment" prong of the test for specific jurisdiction. By entering into an insurance contract with Greenwell, Auto-Owners created continuing obligations between itself and a resident of California. Moreover, because the policy covered risks and losses that could have occurred in California, and damages that could

have been imposed on Greenwell in California, and because Auto-Owners undertook an obligation to defend Greenwell against suits seeking such damages, Auto-Owners had reason to know that it might be subject to litigation in California based on the obligations it undertook to Greenwell in the insurance contract.

Auto-Owners insists that "the [c]ourts have already found that out-of-state insurers . . . do not purposefully avail themselves of California's forum benefits by entering into insurance contracts with California residents and accepting premiums from California." As the preceding analysis shows, however, in concluding that the purposeful availment prong of the specific jurisdiction test was satisfied here we are not relying solely on the fact that Auto-Owners entered into an insurance contract with a California resident and accepted premiums that he sent from California. Rather, in addition we are relying on the specific nature of the insurance contract Auto-Owners entered into with Greenwell and the fact that the some of the coverage Auto-Owners chose to provide Greenwell under that contract extended to risks and losses that could have occurred in California, and damages that could have been imposed on Greenwell in California, such that Auto-Owners had reason to know that it might be subject to litigation in California based on its contractual obligations to Greenwell. Based on the specific facts of this case -- which are readily distinguishable from the facts of the cases on which Auto-Owners purports to rely ---- we conclude the first prong of the test for specific jurisdiction was satisfied here.

IV

*Substantial Nexus*

The second prong of the test for specific jurisdiction is whether the current controversy is "*related to or arise[s] out of* the defendant's contacts with the state." (*Gilmore Bank*, *supra*, 223 Cal.App.4th at p. 1568.) Although Auto-Owners does not realize it, it is *this* prong of the test to which much of the company's arguments are relevant. By focusing on the fact that this case arises out of damage that occurred to Greenwell's property in Arkansas, rather than out of any of the hypothetical situations

13

Greenwell imagines might have been covered by the policy, Auto-Owners is essentially arguing that the *nexus* between the current controversy and the company's contacts with California is insufficient to justify California's exercise of personal jurisdiction over the company. For the reasons that follow, we agree.

As an initial matter, Greenwell contends that Auto-Owners "has forfeited the right to argue that [his] lawsuit is not 'related to' and did not 'arise out' of the [company]'s contacts with the state . . . because [Auto-Owners] never made such an argument below." We reject this contention. The rule that Greenwell cites provides that generally "a *claim of error* will be deemed to have been forfeited when a party fails to bring the error to the trial court's attention by timely motion or objection." (*Avalos v. Perez* (2011) 196 Cal.App.4th 773, 776, italics added.) Here, we are not dealing with a "claim of error" by Auto-Owners -- the only party claiming error is *Greenwell*. Moreover, to the extent Greenwell suggests that this rule for claims of error should apply more generally to *arguments* -- such that Auto-Owners should be deemed to have forfeited any argument on the "substantial nexus" issue because the company did not make that argument in the trial court -- we note that "it is within this court's discretion to make an exception to this rule when the issue on appeal relates to a question of law only." (*Id.* at p. 777.) Greenwell fails to explain why, even assuming the basic rule applies here, we should not apply the exception for issues of law here, and we see no reason for not doing so. Given that the pertinent facts are undisputed, the question of whether the current controversy has a sufficient nexus to Auto-Owner's contacts with California to justify the exercise of personal jurisdiction over the company is purely one of law, and one which Greenwell

14

has had a fair opportunity to address.[1]  Accordingly, Auto-Owners has not forfeited anything.

In *Vons*, our Supreme Court explained that the second prong of the test for specific jurisdiction is satisfied if "there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim."[2]  (*Vons*, *supra*, 14 Cal.4th at p. 456.)  "A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction. Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate."  (*Id.* at p. 452.)  "[F]or the purpose of establishing jurisdiction the intensity of forum contacts and the connection of the claim to those contacts are inversely related. . . . '[A]s the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts, and fairness is assured by limiting the circumstances under which the plaintiff can compel him to appear and defend.' "  (*Ibid.*)

Following *Vons*, in applying the substantial nexus prong of the test for specific jurisdiction, we begin by reexamining the nature and scope of Auto-Owners' contacts

---

[1]    Indeed, following oral argument, we permitted Greenwell to supplement his previous briefing and file a letter brief specifically addressing the substantial nexus prong of the test for specific jurisdiction.

[2]    The United States Supreme Court "has declined to clarify the relatedness element of specific jurisdiction."  (*Vons*, *supra*, 14 Cal.4th at p. 451, fn. 4; see also *Moki Mac River Expeditions v. Drugg* (2007) 50 Tex.Sup.J. 498 [221 S.W.3d 569, 584] ["The Supreme Court has yet to explicate the degree of relatedness necessary to support specific jurisdiction over a nonresident defendant"].)  While courts across the country have taken various approaches to this issue (see *Vons*, *supra*, 14 Cal.4th at pp. 460-475 [identifying three, but refusing to apply, different approaches: but-for relatedness, proximate cause, and substantive relevance]), we are bound by and must follow decisions from our state Supreme Court.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  Accordingly, we look to our Supreme Court's decision in *Vons* for guidance on this issue.

15

with California to determine the intensity of those contacts. Viewing the evidence in the light most favorable to Auto-Owners, it appears that with the exception of the insurance contract at issue here, Auto-Owners does not conduct and has not conducted any business in California. The company is not licensed or authorized to do business in California, does not write policies for California, does not have any agents licensed to sell its policies in California, does not solicit business in California, does not have any employees in California, does not pay taxes in California, and has never commenced any legal action in California. So far as the record shows, Auto-Owners' only contact with California is that it agreed to write a commercial policy for Greenwell, who does business in Tracy under the name Greenwell Properties. But Auto-Owners did not solicit Greenwell's business in California. Instead, Greenwell obtained the policy from the company through an insurance agent in Arkansas, and though -- as we have explained -- some of the risks, losses, and damages covered under the terms of that policy could have arisen in California, where Greenwell resides and maintains the office for his business as a property owner, the primary purpose for the insurance was to cover risks related to the apartment building Greenwell owned in Arkansas. The declarations for both the commercial property coverage and the commercial general liability coverage in the policy specifically identified only the Little Rock apartment building. Indeed, so far as Auto-Owners was aware, the only building Greenwell owned and thus the sole object of his business as a property owner was the apartment building in Arkansas. This is consistent with the fact that the portion of the premium Greenwell paid for the commercial general liability coverage was calculated by reference to Greenwell's ownership of the apartment building and in fact appears to have been calculated specifically by reference to the number of apartments in the building.[3]

---

[3] In his complaint, Greenwell alleged that the Arkansas apartment building he bought had 12 units in it. The declarations pages for the commercial general liability

16

The evidence also shows that the vast majority of the insurance premium Greenwell paid each year for the policy from Auto-Owners was attributable to the commercial property coverage, which was almost exclusively for the apartment building in Arkansas.[4]  As we have noted, for the first policy year (2007-2008) the annual premium for the commercial property coverage was $5,899 and the annual premium for the commercial general liability coverage was $257.  This represents a ratio of almost 23 to 1.  In the third policy year, that ratio increased to nearly 26 to 1, and in the fourth policy year, the ratio was over 28 to 1.[5]  Moreover, because the coverage territory for the commercial general liability coverage extended throughout the United States and beyond, the small portion of the insurance premium for that coverage was not attributable solely to California risks and damages, but actually served to cover Greenwell throughout the nation (even though, as we have noted, the cost of that coverage appears to have been calculated by reference to the number of apartments Greenwell owned in Arkansas).

Finally, while Auto-Owners continued its contractual relationship with Greenwell over three annual renewals of the policy, there is no evidence that Auto-Owners did anything to solicit those renewals.

From the foregoing, it is readily apparent that Auto-Owners' contacts with California -- although sufficient to put the company on notice that it might be subject to litigation in California based on the obligations it undertook to Greenwell in the

---

coverage for the first policy year shows that the main portion of the premium for that coverage ($252) was attributable to the category "Apartment Buildings" and was calculated by multiplying $21.015 by 12.

[4]    As we have explained already, the commercial property coverage also applied to newly acquired property elsewhere, but only for a limited period of time following acquisition of that property.

[5]    There is no evidence regarding the premium for the second policy year (2008-2009).

insurance contract -- were far from extensive.  Given that fact, under *Vons* the connection between the present litigation and the company's contacts with California must be proportionally greater and more direct to justify the exercise of specific jurisdiction over the company.  Under the facts here, however, we conclude the nexus between Auto-Owners' forum activities and Greenwell's claim is not sufficiently substantial to support the exercise of jurisdiction over the company in California in this action.

What is most important here is that Greenwell's lawsuit does not arise out of any of the risks, losses, and damages covered by the policy that could have occurred in California (as discussed above).  Instead, the lawsuit relates directly to fires that damaged the apartment building Greenwell owned in Arkansas and Auto-Owners' alleged bad faith refusal to pay what Greenwell contends were the full insurance proceeds due to him because of those fires.  Thus, what is at issue here are losses that occurred in Arkansas that were covered (or not, as the case may be) by the commercial property coverage in the policy that Greenwell obtained through an insurance agent in Arkansas.  While it may not be a purely fortuitous circumstance that the insurance policy also covered risks that might have arisen in California -- because Greenwell operated his business from here, and the coverage territory of the policy extended throughout the United States and beyond -- the critical fact is that Greenwell is not suing Auto-Owners for any California risk that came to fruition; he is suing Auto-Owners because of something that happened to his business property in Arkansas, which is where Greenwell obtained the insurance at issue, the primary purpose of which was to cover potential risks and damage to that Arkansas property.  All of these factors support the conclusion that there is no substantial nexus between Auto-Owners' activities in California and the present lawsuit.

It is also significant to note that Greenwell concedes that the witnesses in this case, other than himself, are in Arkansas, not California.  This makes sense, given that the dispute appears to be over whether the two fires at the apartment building one day apart should have been treated as two separate losses under the policy, the determination of

18

which will probably depend largely upon evidence relating to the fires. This is in marked contrast to Greenwell's primary authority, *McGee*, where "the crucial witnesses . . . on the company's defense of suicide" were to be found in California, where the insured died. (*See McGee v. International Life Ins. Co.* (1957) 355 U.S. at pp. 223-224 [2 L.Ed.2d at p. 226].) This absence of evidence in California only serves to reinforce the conclusion that the connection between Auto-Owners' contacts with California and Greenwell's lawsuit is not substantial enough to justify California's exercise of specific jurisdiction over the company in this case.

In his post-argument letter brief, in support of his argument that the substantial nexus test was satisfied here, Greenwell relies in large part on a line from *Vons* that our Supreme Court later quoted in a post-*Vons* decision in 2005 -- *Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1068. That line, which ultimately can be traced back to a footnote in a 1968 decision by the federal Sixth Circuit Court of Appeals -- is as follows: "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." (*Southern Machine Company v. Mohasco Industries, Inc.* (6th Cir. 1968) 401 F.2d 374, 384, fn. 29.)[6]

According to Greenwell, the operative facts of the present controversy *are* related to Auto-Owners' contacts with California, because Auto-Owners' contact with California is the insurance policy the company issued to him and he is suing Auto-Owners on that contract. Therefore, in his view, the substantial nexus test was clearly satisfied.

---

**6** The Sixth Circuit quoted the footnote from *Southern Machine* 20 years later in *Third Nat. Bank in Nashville v. WEDGE Group Inc.* (6th Cir. 1989) 882 F.2d 1087, 1091. In turn, our Supreme Court quoted *Third Nat. Bank* in *Vons*, *supra*, 14 Cal.4th at page 455, then quoted *Vons* in *Snowney*, *supra*, 35 Cal.4th at page 1068.

We do not believe this single line that can be traced back to a footnote in a Sixth Circuit decision from nearly 50 years ago justifies a different conclusion here than the one we have explained already. To the extent Greenwell would have us read that line to mean that *any relationship whatsoever* between the operative facts of the controversy and the defendant's contact with the forum state is sufficient to support a finding of specific jurisdiction, that reading would undercut entirely the extensive discussion of the substantial nexus test in both *Vons* and *Snowney*. Our Supreme Court has made it clear that "the state may exercise specific jurisdiction [only] if there is a *substantial* connection or nexus between forum contacts and the litigation." (*Vons*, *supra*, 14 Cal.4th at p. 454, italics added.) Under this formulation, a court must consider "the nature of the relationship between the claim and the forum contacts" (*ibid.*) to determine whether the claim is *substantially* related to the forum contacts. Read literally, however, the line from *Southern Machine* would require a court to determine only whether there is *any relationship at all* -- substantial or insubstantial -- between the claim and the forum contacts. We do not believe our Supreme Court, by quoting this line from *Southern Machine*, intended such a result.

Indeed, in *Vons* our Supreme Court specifically rejected an alternate formulation of the relatedness test for specific jurisdiction under which the requisite relatedness would be established by showing a "but for" causal connection between the defendant's forum contacts and the present controversy. (See *Vons*, *supra*, 14 Cal.4th at pp. 464-469.) In doing so, the court explained that a "but for" test could be "too lax" because it "theoretically [could] include any historical cause of the plaintiff's injuries." (*Id.* at p. 467.) More important, though, the court explained that such a test "is overly mechanical and fails to concentrate on the central issue presented by a motion to quash for lack of specific jurisdiction--that is, whether the defendant's forum contacts and the plaintiff's claim are related sufficiently so that it is *fair* to subject the defendant to jurisdiction in the forum." (*Id.* at pp. 468-469.)

20

The result would be the same if we were to apply the line from *Southern Machine* literally and find the necessary relationship to establish specific jurisdiction whenever there is *any relationship whatsoever* between the defendant's forum contacts and the plaintiff's claim.  Such a test would be too lax and would ignore completely the question of whether there is a *sufficient* relationship between the contacts and the claim to *fairly* subject the defendant to jurisdiction in the forum.

For the foregoing reasons, we decline to apply the line from *Southern Machine* literally and instead adhere to the substantial nexus test as it is more fully developed and explained in *Vons* and *Snowney*.  Under that test, as we have explained already, we conclude that the relationship between Auto-Owners' contacts with California and Greenwell's lawsuit is not substantial enough to justify California's exercise of specific jurisdiction over the company in this case.  Accordingly, we likewise conclude that the trial court did not err in granting Auto-Owners' motion to quash the service of summons.

DISPOSITION

The order quashing the service of summons is affirmed.  Auto-Owners shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)



      ROBIE      , J.



We concur:



    RAYE     , P. J.



    HOCH     , J.