Filed 11/19/20  Ghuman v. Gronager CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SUKHJIT SINGH GHUMAN, | D076788 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2018-00055048-CU-FR-CTL) |
| TOMAS GRONAGER et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Gregor Law Offices, T. Steven Gregor; Burke, Williams & Sorensen and Matthew D. Murphey for Plaintiff and Appellant.

Dart Law and Matthew B. Dart for Defendants and Respondents.

I

INTRODUCTION

Sukhjit Singh Ghuman, a citizen of the United Kingdom (UK) who resided part time in California, sued six UK residents for fraud and intentional interference with contract alleging they conspired to defraud him

in a deal to sell his UK business to another UK business by paying him less than he believed he was owed. Ghuman appeals an order of the trial court granting the defendants' motion to quash service of the summons and complaint for lack of personal jurisdiction. We conclude the court properly determined the defendants lacked minimum contacts with California to exercise personal jurisdiction over them. We, therefore, affirm the order.

## II

## BACKGROUND

### A

Ghuman was the sole owner and chief executive officer of a UK company, Octavian Continental Ltd. (Octavian), which provided private security services to businesses in the UK. Earl Knight and Nathan Potter were directors of Octavian.

Ghuman, who is still a UK citizen, moved from the UK to the United States in 2013. Since 2014, he has split his time living in both San Diego and Arizona.

John McRoberts was an investor and director in another UK company, CE Facilities Services (CE Facilities). Tomas Gronager, Trevor East, and Tony Hallet were directors of CE Facilities.

Gronager called Ghuman on his mobile phone in the Fall of 2014 while Ghuman and his wife were driving from San Diego to Del Mar. Gronager said he was the chief executive officer of CE Facilities, which provided private security and janitorial services. He said CE Facilities was interested in buying Octavian. Gronager said McRoberts was going to invest £100 million to expand CE Facilities, which potentially included buying Octavian. They were interested in buying Octavian because it had a good reputation in the

2

industry. He also said the fact Ghuman had moved to California was attractive because Ghuman would not compete with them in the UK.

Negotiations to purchase Ghuman's shares of Octavian occurred over a period of nine months and were finalized in August 2015. Ghuman, who was in California for most of the negotiations, participated by video conference, email, and telephone. The other Octavian directors, Potter and Knight, also participated in the negotiations and were aware Ghuman was in California.

Ghuman made it known during the negotiations that he planned to use the proceeds from his sale of Octavian to fund new businesses in California and Arizona. He said the parties anticipated he would receive additional compensation to act as an independent consultant for CE Facilities.

CE Facilities purchased Ghuman's stock for approximately $4 million. Ghuman was to receive deferred payments over three years consisting of "a mixture of loan notes and deferred consideration for the new business that was coming in." Ghuman expected to receive the payments in California.

Ghuman and CE Facilities memorialized the deal in a share purchase agreement, which Ghuman executed in the UK. The purchase agreement contained a choice of law provision stating, "This Agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the law of England and Wales." The parties agreed that the courts of England and Wales "shall have exclusive jurisdiction to settle any dispute or claim arising out of or in connection with this Agreement or its subject matter or formation (including non-contractual disputes or claims)."[1]

---

[1]     We deny defendants' opposed request for us to take judicial notice of a complete copy of the share purchase agreement. The record contains a true

CE Facilities rebranded Octavian as CE Security.  Knight and Potter became directors and managers of the newly formed CE Security.

Ghuman received the first deferred payment, but he claims CE Facilities failed to make subsequent payments.  He claims a company he tried to start in California is no longer in business, "primarily because CE Facilities failed to make the payments" under the share purchase agreement.

B

1

Ghuman sued Gronager, Hallet, East, McRoberts, Knight, and Potter (collectively defendants) in October 2018 for fraud and intentional interference with contract.  The defendants all reside in the UK.

Ghuman alleged he elected to sell a company he owned in the UK "[i]n part because of his relocation."  He alleged he was assured a substantial investment would be made in the company after he sold his shares and he believed "he would be paid in full for his shares."  He alleged he was not paid all he believed he was owed for his shares and estimated he was still owed approximately £2.4 million or $3 million.  He alleged the defendants conspired with one another, had no intention of paying Ghuman the obligations due, and misled him to sell his shares in the company for less than he believed he was owed.

---

and correct copy of excerpted portions of the agreement, which was attached to McRobert's declaration in support of the motion to quash.  "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court."  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 (*Vons Companies*).)  No exceptional circumstances exist here to justify departure from this rule.  (*Ibid*.)

The defendants specially appeared to move to quash service of the summons and complaint for lack of personal jurisdiction pursuant to Code of Civil Procedure section 418.10, subdivision (a)(1) on the basis that they are not residents of California, were not served in California, did not consent to California's jurisdiction, and lack the requisite minimum contacts with the state for California to assert personal jurisdiction over them.

Each defendant submitted declarations regarding their lack of contact with the State of California. Gronager visited California once for vacation in 1985. East visited California on a holiday, but has not been to California for business since the 1990s. McRoberts visited California in 1997 on a holiday and in 2018 to visit friends and to visit a subsidiary of a UK company for which he worked. Potter made two short visits to California in 2014 and has not been back since. Hallet and Knight have never been to California. The defendants argued they did nothing to avail themselves of the benefits of California because the transaction pertained to a UK company and the agreement, which was signed in the UK, vests exclusive jurisdiction in UK courts.

The defendants also asserted Ghuman filed this litigation after he was found liable in a lawsuit in the UK filed by CE Facilities and he failed to pay damages in that case. Ghuman sought bankruptcy protection in the UK and was declared bankrupt, arguably making this matter an asset of the bankruptcy estate.

3

Ghuman opposed the motion to quash contending the forum selection clause in the purchase agreement was not enforceable and the court should exercise jurisdiction over the defendants because they knew he was in

California before, during, and after negotiating the purchase of the company, they paid Ghuman in California, and Ghuman was injured in California by their alleged breach of the agreement. He submitted his own declaration regarding the negotiations for the company and the defendants' knowledge that he lived in California. He also submitted a declaration of a third party who participated in the negotiations and later helped establish businesses for Ghuman in California and Arizona.

Ghuman alternatively asked the court to continue the hearing on the motion to quash to allow jurisdictional discovery. According to Ghuman's declaration, Octavian had an email server that archived email communications every three months on a drive called the Barracuda Archiver. He estimated the Barracuda Archiver contains over 1,000 email communications and other documents regarding the negotiations and the share purchase agreement. He believed those documents would show "that all of the defendants in this case knew that [he] was living in California during and after the negotiations" and that one of the reasons he agreed to sell Octavian was because he was going to use the funds to start other businesses in California and Arizona. Ghuman claimed CE Facilities blocked his access to the archiver because of the litigation pending in the UK. Ghuman wanted the court to order discovery from the archiver on the issue of jurisdiction. He also claimed the archiver would "demonstrate the defendants' fraud."

4

The trial court granted the motion to quash. The court noted that although Ghuman participated in negotiations by video conference, email, and telephone while he was in California, some negotiations must have taken place elsewhere since Ghuman signed the agreement in the UK.

6

The court observed Octavian provided services overseas and there was no evidence any work was to be done in California. The purchase agreement "concerned the acquisition of one United Kingdom company by another United Kingdom company, and all of the defendants reside in the U.K." In addition, the court considered the choice of law provision in the agreement designating the courts of England and Wales to have exclusive jurisdiction.

The court concluded the "purpose of the transaction was to acquire a UK company that conducted no activities in California." The court determined the fact Ghuman intended to use the money to start businesses in California and Arizona was incidental. As a result, the court concluded the circumstances did not support the conclusion defendants engaged in wrongful conduct purposely directed at California.

The court also denied the request to continue the hearing to conduct jurisdictional discovery. The court determined the requested discovery did not appear tailored to address the jurisdictional issue. This portion of the order is the subject of a separate appeal.

III

DISCUSSION

A

*General Principles*

"California's long-arm statute authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California. (Code Civ. Proc., § 410.10.) A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of

7

jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " (*Vons Companies*, *supra*, 14 Cal.4th at p. 444, quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.)

There are "two types of personal jurisdiction:  'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." (*Bristol-Myers Squibb Co. v. Superior Court* (2017) 582 U.S. ___ [198 L. Ed. 2d 395, 137 S.Ct. 1773, 1779–1780].)  The parties agree only specific jurisdiction is at issue in this case.

" 'When a defendant moves to quash service of process' for lack of specific jurisdiction, 'the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction.' [Citation.]  'If the plaintiff meets this initial burden, then the defendant has the burden of demonstrating "that the exercise of jurisdiction would be unreasonable." ' " (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062 (*Snowney*).)  Because there is no dispute regarding the jurisdictional facts, we independently review whether the defendants' contacts with California are sufficient to justify the exercise of specific personal jurisdiction.  (*Ibid.*)

Specific jurisdiction requires "some nexus between the cause of action and the defendant's activities in the forum state." (*Brue v. Al Shabaab* (2020) 54 Cal.App.5th 578, 589 (*Brue*).)  "When determining whether specific jurisdiction exists, courts consider the ' "relationship among the defendant, the forum, and the litigation." ' [Citation.]  A court may exercise specific jurisdiction over a nonresident defendant only if:  (1) 'the defendant has purposefully availed himself or herself of forum benefits' [citation]; (2) 'the "controversy is related to or 'arises out of' [the] defendant's contacts with the forum" ' [citation]; and (3) ' "the assertion of personal jurisdiction would

8

comport with 'fair play and substantial justice' " ' [citations]."  (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269 (*Pavlovich*).)

B

*Analysis*

1

"Due process requires purposeful availment because it 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' "  (*Thurston v. Fairfield Collectibles of Georgia, LLC* (2020) 53 Cal.App.5th 1231, 1237 (*Thurston*), quoting *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297.)  " 'The purposeful availment inquiry … focuses on the defendant's intentionality.  [Citation.]  This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with the forum.  [Citation.]  Thus, the ' "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts [citations], or of the "unilateral activity of another party or a third person." [Citations.]' [Citation.]  'When a [defendant] "purposefully avails itself of the privilege of conducting activities within the forum State," [citation], it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State.' [Citation.]"  (*Pavlovich, supra,*

29 Cal.4th at p. 269.) We assess the contacts of each defendant individually with the state. (*Calder v. Jones* (1984) 465 U.S. 783, 790 (*Calder*).)

Ghuman contends the defendants purposefully availed themselves of the benefits of doing business in California based on the following facts: (1) Gronager called Ghuman in California; (2) CE Facilities was interested in purchasing Octavian because Ghuman would not compete with CE Facilities in the UK after selling Octavian because he lived in California; (3) the parties engaged in months of negotiations by phone, video conference, and email knowing Ghuman was primarily in California; (4) the defendants agreed to pay Ghuman with deferred payments, which Ghuman expected to receive in California; (5) the defendants knew Ghuman intended to use the proceeds to start companies in California and Arizona; and (6) the parties anticipated Ghuman would provide ongoing consulting services to CE Facilities for additional compensation. He claims the defendants "aimed their intentional acts at California and knew that Ghuman would suffer harm in California as a result of such acts." We are not persuaded.

Accepting these facts as true for purposes of the jurisdictional analysis, they do not show the defendants attempted to avail themselves of any privilege related to conducting business *in* California. Although Ghuman may have been physically in the State of California for most of the negotiations, the contract itself was executed in the UK and vested jurisdiction for any matters–contractual or non-contractual–related to the contract or its formation in the courts of England and Wales.

The relationship of the *defendants* to California was attenuated at best. This was a deal for one UK company to purchase another UK company. The benefits of the transaction to the defendants were intended to manifest in the UK rather than in California. Gronager's alleged representation that

McRoberts intended to invest capital into CE Facilities was to expand its business in the UK. Gronager said the benefit of Ghuman living outside the UK was that he would not compete with CE Facilities or the newly branded company in the UK. This had no bearing on Ghuman's presence in California; the defendants would obtain the same benefit if he was in Arizona or Denmark. Likewise, the benefit to defendants of deferred payments would exist no matter where Ghuman resided.

Ghuman provided no evidence that any subsequent consulting service he might provide to CE Facilities had anything to do with his presence in California or would involve any business activity by the defendants in California. According to Ghuman, Gronager said Ghuman had a good reputation in the security service industry in the UK. Presumably this would be the reason they might ask him to provide consulting services for its UK businesses.

Even if the defendants knew Ghuman intended to start his own new business in California with the proceeds from the sale of Octavian, he did not show the defendants had any interest in a potential California business or would otherwise benefit from such a business. The only potential connection Ghuman offers in this regard is his claim that he and Potter discussed Potter joining him in California and discussed providing services to an existing client of Octavian in Arizona and California. However, both Ghuman and Potter state Potter's two brief visits to California in 2014 predated any negotiations with CE Facilities. Potter subsequently became a director in CD Facilities' newly branded company in the UK. Therefore, there is no evidence the purchase agreement in this case contemplated Potter, or any other defendant, had any business interest in a California corporation. Ghuman's

11

unilateral action in forming a California business does not subject the defendants to personal jurisdiction. (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.)

These facts are distinguishable from cases in which an out-of-state company advertises in various mediums in California or maintains a Web site to solicit California customers to sell goods or services to California residents. (*Snowney*, *supra*, 35 Cal.4th at pp. 1060, 1065 [jurisdiction proper for hotel chain that advertised to California residents with billboards as well as print and digital media and maintained a Web site for reservations with directions from California]; *Thurston*, *supra*, 53 Cal.App.5th at p. 1240 [sales of goods or services to California residents via a Web site and catalog constitutes purposeful availment for jurisdiction]; but see *Pavlovich*, *supra*, 29 Cal.4th at pp. 266, 274 [posting a code containing proprietary information on an Internet Web site was insufficient for jurisdiction].) The facts here are also different from cases in which an insurance company agrees to cover potential risks or losses in California knowing it should expect to be subject to litigation in the state (*Greenwell v. Auto-Owners Ins. Co.* (2015) 233 Cal.App.4th 783, 795), or where a foreign insurance broker targets a California insurance brokerage firm to place policies in California, purposefully availing itself of the privilege and opportunity to do business in California. (*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.* (9th Cir. 2003) 328 F.3d 1122, 1127, 1130.)

Finally, they are unlike the case of *Calder*, *supra*, 465 U.S. at pages 788–789, where the United States Supreme Court concluded it was appropriate for California to exercise jurisdiction over a Florida newspaper where the "libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California

12

sources, and the brunt of the harm, in terms both of [the entertainer's] emotional distress and the injury to her professional reputation, was suffered in California. In sum, California [was] the focal point both of the story and of the harm suffered. Jurisdiction over [the newspaper] [was] therefore proper in California based on the 'effects' of their Florida conduct in California."

Ghuman's allegation that he did not receive the payments he expected in California is not sufficient to establish jurisdiction. "[M]ost courts agree that merely asserting that a defendant knew or should have known that his intentional acts would cause harm in the forum state is not enough to establish jurisdiction under the effects test." (*Pavlovich*, *supra*, 29 Cal.4th at pp. 270–271.) "[T]he *Calder* effects test requires intentional conduct *expressly aimed at or targeting* the forum state in addition to the defendant's knowledge that his intentional conduct would cause harm in the forum." (*Id.* at p. 271.) There is no evidence the defendants intentionally or expressly aimed any alleged misconduct toward California.

2

The controversy has no relationship to any contact by the *defendants* with California. "[T]he relatedness requirement is satisfied if 'there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim.'" (*Snowney*, *supra*, 35 Cal.4th at p. 1068.) " ' " '[O]nly when the operative facts of the controversy are not related to the defendant[s'] contact with the state can it be said that the cause of action does not arise from that [contact].' " ' " (*Ibid.*)

As discussed *ante*, there is no evidence the defendants had any business interest in California or that they intentionally directed their conduct toward California or its residents in general. Ghuman's claims of fraud and intentional interference with contract arose from a deal between

13

foreign citizens regarding their interests in foreign businesses. His allegations the defendants misled him into selling his UK business for less than he believed he would be paid have nothing to do with any activity of the defendants in California. "[W]hen no relationship exists between the defendant's contacts with the forum state and the specific claims at issue, the court may not exercise specific jurisdiction 'regardless of the extent of the defendant's unconnected activities in the State.' " (*Brue, supra*, 54 Cal.App.5th at p. 592.)

3

Because we determine Ghuman has not met his burden of establishing the purposeful availment or relatedness requirements, we need not reach the issue of "whether the assertion of specific jurisdiction is fair." (*Vons Companies, supra*, 14 Cal.4th at pp. 475–476.) Nevertheless, we note each of the defendants submitted evidence regarding their minimal to non-existent physical visits to California along with the forum selection clause of the purchase agreement. Ghuman does not dispute this evidence other than to say that the defendants should not get the benefit of the forum selection clause because they were not individual signatories. Ghuman has not established exercise of personal jurisdiction over the defendants would be reasonable or fair in this case simply because he claims he did not receive the payments he expected in this deal regarding foreign companies.

IV

DISPOSITION

The order granting the motion to quash service of summons is affirmed. Respondents shall recover their costs on appeal.

McCONNELL, P. J.

WE CONCUR:


BENKE, J.


IRION, J.